IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JOLENE L. CONGROVE,

      Plaintiff,

  v.                           Civil Action 2:15-cv-2630
                               Chief Judge Edmund A. Sargus, Jr.
                               Magistrate Judge Jolson

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff, Jolene Congrove, filed this action under 42 U.S.C. § 405(g) seeking review of a decision of the Commissioner of Social Security (the "Commissioner") denying her application for supplemental security income. For the reasons that follow, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner of Social Security's non-disability finding and **REMAND** this case to the Commissioner and the Administrative Law Judge ("ALJ") under Sentence Four of § 405(g).

I.      BACKGROUND

Plaintiff filed this case on July 20, 2015, seeking judicial review of the denial of her application for supplemental security income. The Commissioner filed the administrative record on September 21, 2015. (Doc. 11). Plaintiff filed a Statement of Specific Errors on October 21, 2015 (Doc. 12), the Commissioner responded on January 23, 2016 (Doc. 18), and Plaintiff filed a Reply Brief on February 5, 2016 (Doc. 19).

### A. Personal Background

Plaintiff was born on June 11, 1976, and was twenty-seven years old on the alleged onset date of disability (Tr. 99, PAGEID #159).  She has a high school education, and work experience as a cashier, customer service representative, and an order clerk (Tr. 160, PAGEID #220).

### B. Relevant Hearing Testimony

During the hearing, Plaintiff testified to a number of ailments.  Plaintiff testified, "I would get one thing over and another health issue would come up.  First it started with my ankles and legs. Then I had my head injury in '03." (Tr. 46, PAGEID #106).  Plaintiff's head injury occurred while she was working at Speedway on December 27, 2003, when her manager opened a cabinet door into the top of her head while she was cleaning up a spill.  (*Id.*).  Plaintiff also reported problems due to narcolepsy, stating the medication she takes for that condition "doesn't always help." (Tr. 47, PAGEID #107).  In addition, Plaintiff reported problems with irritable bowel syndrome, stomach issues, kidney stones, a torn left rotator cuff, fibromyalgia, hearing loss in her right ear, and depression.  (Tr. 47–48, PAGEID #107–08).  Plaintiff indicated that she stopped working due to "all [of her] health problems." (Tr. 47, PAGEID #107).

Plaintiff has tried to work part-time jobs since December 27, 2003, but claimed "all of [her] doctors' appointments and all [of her] other onset things, like [her] narcolepsy and [her] fibromyalgia . . . prevent[ ] [her] from going to work." (Tr. 48, PAGEID #108).  Plaintiff testified that she struggles every day just to get out of bed and is "just barely getting by with taking care of [her] daily needs." (Tr. 50, PAGEID #110).  Plaintiff also stated that she has difficulty standing, her hands and feet "go numb," and she suffers from headaches and sinus problems.  (Tr. 50–51, PAGEID #110–11).  Plaintiff has approximately three or four headaches a week. (Tr. 52, PAGEID #112).  In addition, Plaintiff has problems sleeping, even with

medication.  (*Id.*).

Plaintiff reported "feel[ing] bad" because she "need[s] help with little things" that she is no longer able to do.  (Tr. 54, PAGEID #114).  She gets depressed because she does not "understand why" she suffers from so many health problems and because "it seems so unfair."  (*Id.*).  Plaintiff testified that she has crying spells daily.  (*Id.*).

### C.  Relevant Medical Evidence

#### 1.  Dr. Melissa Jefferis

Dr. Melissa Jefferis is Plaintiff's primary care physician.  For over two years, she treated Plaintiff for multiple conditions, including depression for which Dr. Jefferis prescribed Prozac, Abilify, and Trazodone.  (Tr. 381–83, PAGEID #441–43).  After Plaintiff applied for disability benefits, Dr. Jefferis completed a questionnaire addressing Plaintiff's work-related mental limitations.  (Tr. 391–93, PAGEID #451–53).  Among other findings, she found that Plaintiff suffered from an extreme limitation in tolerating customary work pressures, marked limitations in working in cooperation with others and maintaining attention and concentration, and moderate limitations in responding appropriately to changes in a work setting and carrying out work instructions independently.  (Tr. 392–93, PAGEID #452–53).  Dr. Jefferis also opined that Plaintiff would be likely to miss five or more days of work per month due to her condition and that her condition was likely to deteriorate under the stress of full-time employment.  (Tr. 393, PAGEID #453).  Finally, Dr. Jefferis noted that Plaintiff suffers from "severe depression leading to decreased tolerance of normal levels of stress" and "minimal stresses have caused a worsening of [her] symptoms in the past."  (*Id.*).

#### 2.  Dr. Sudhir Dubey

Sudhir Dubey, Psy.D., evaluated Plaintiff for disability purposes during a clinical

interview on July 17, 2012. (Tr. 302–309, PAGEID #362–69). Plaintiff described her mood generally as being "okay, depressed and up and down" for the past two years. (Tr. 303, PAGEID #363). Her current medications included Cymbalta and Fluoxetine. (*Id.*). She reported receiving counseling as a child but denied participating in mental health treatment or inpatient psychiatric hospitalization as an adult. (*Id.*). She further reported mood variations, some crying spells, decreased energy, variability in sleep, and a twenty-pound weight gain over the previous year. (*Id.*). Plaintiff denied any problems with anhedonia, suicidal or homicidal ideation, mania, hypomania, anxiety, panic, post-traumatic stress disorder symptoms, delusions, depersonalization, hallucinations, obsessions, or compulsions. (*Id.*). Plaintiff had an individualized education plan throughout her schooling. (Tr. 304, PAGEID #364). She reported good relationships with her peers and an okay relationship with her teachers. (*Id.*). While working, Plaintiff maintained positive relationships with her co-workers and supervisors. (*Id.*). Dr. Dubey noted that Plaintiff lived independently with and cared for her 14-year-old daughter, shopping for necessary items, paying bills, planning activities, driving, caring for her personal hygiene and grooming, scheduling and keeping appointments, taking medications without reminders, completing paperwork, socializing with family members and friends, leaving her residence as necessary, and caring for her pets. (Tr. 306, PAGEID #366).

     On mental status examination, Dr. Dubey found Plaintiff had no problems with comprehension: She was alert, fully oriented, and responsive, and there was no evidence of any impairment of her concentration or memory. (Tr. 305, PAGEID #365). Dr. Dubey estimated that Plaintiff's level of intellectual functioning fell within the average range. (Tr. 306, PAGEID #366). Dr. Dubey diagnosed Plaintiff with a depressive disorder, not otherwise specified, and assigned a Global Assessment of Functioning (GAF) score of 65. (Tr. 307, PAGEID #367). Dr.

Dubey opined that Plaintiff retained the capacity, persistence, and pace to understand, remember, and carry out multi-step instructions and perform these types of tasks independently. (Tr. 308, PAGEID #368). Dr. Dubey concluded that Plaintiff was capable of responding appropriately to supervisors and coworkers and was similarly capable of responding appropriately to work pressures. (Tr. 309, PAGEID #369).

### 3. State Agency Assessments

Two state agency reviewers also commented on Plaintiff's mental impairments. Robyn Hoffman, Ph.D. found that Plaintiff had a mild restriction of daily activities, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, and pace. (Tr. 90, PAGEID #150). Dr. Hoffman further found Dr. Dubey's opinions to be inconsistent with the totality of the evidence in that Plaintiff was in fact moderately impaired in handling stress and in concentration, persistence, and pace. (Tr. 92, PAGEID #152). Dr. Hoffman found Plaintiff partially credible as evidenced by her statements about her functioning and the impact of mental health issues. Karen Steiger, Ph.D., the other state agency reviewer, made essentially the same findings as Dr. Hoffman. (Tr. 101–108, PAGEID #161–68).

### D.    Relevant Portions of the ALJ's Decision

In his decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 28, 2012, the application date. (Tr. 20, PAGEID #80). He also determined that Plaintiff had numerous severe impairments, including a depressive disorder, which did not meet or equal the requirements of any section of the Listing of Impairments. (Tr. 21–28, PAGEID #81–88). Further, the ALJ found that the claimant retained the mental capacity to perform simple to low moderate tasks without difficulty, relate effectively to others without

problems, and perform work in the low to moderate stress range, but she may have difficulty performing work at a higher stress range.  (Tr. 28, PAGEID #88).   Finally, the ALJ found that Plaintiff is capable of performing past relevant work as a cashier and other jobs that exist in significant numbers in the national economy.  (Tr. 33–35, PAGEID #93–95).  Based upon these findings, the ALJ decided that Plaintiff has not been under a disability and was not entitled to benefits.  (Tr. 35, PAGEID #95).

## II.     STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).  The Commissioner's findings of fact must also be based upon the record as a whole.  *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985).  To that end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002).

Even if the ALJ's decision satisfies the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right."  *Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).  "An ALJ's failure to follow agency rules and regulations 'denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'"  *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (quoting

*Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009)).

## III. DISCUSSION

In her statement, Plaintiff assigned multiple errors.  The Court finds Plaintiff's first assignment of error—that the ALJ failed to provide good reasons for rejecting her treating physician's opinion regarding her mental health—to be meritorious.[1]

### A. The ALJ's Analysis of Dr. Jefferis's Opinion

Dr. Jefferis opined that Plaintiff suffers from an extreme impairment pertaining to her "ability to accept instruction from or respond appropriately to criticism from supervisors or superiors" and her "ability to tolerate customary work pressures."  (Tr. 391–92; PAGEID #451–52).  She also opined that Plaintiff suffers from a marked impairment as to her ability to work in cooperation with or in proximity to others without being distracted by them, maintain attention and concentration for more than brief periods of time, and perform at production levels expected by most employers.  (*Id.*).  Dr. Jefferis further noted that Plaintiff suffers from a moderate impairment as to her ability to appropriately respond to co-workers or peers, perform and complete work tasks in a normal work day or work week at a consistent pace, carry through instructions and complete tasks independently, respond appropriately to changes in the work setting, be aware of normal hazards and take necessary precautions, and behave predictably, reliably, and in an emotionally stable manner.  (*Id.*).  She also opined that Plaintiff would likely miss five or more days of work per month due to her condition and that her condition was likely

---

[1] This finding obviates the need for analysis of Plaintiff's remaining assignments of error:  that the ALJ failed to provide good reasons for rejecting Dr. Jefferis's physical health opinion and improperly applied AR 98-4(6) by finding that the new evidence pertaining to Plaintiff's mental health was not material.  Although Plaintiff's remaining assignments of error appear to be well taken, the undersigned need not, and does not, resolve whether these alternative bases support reversal and remand.  Nevertheless, on remand, the ALJ may consider Plaintiff's remaining assignments of error if appropriate.  *Cox v. Comm'r of Soc. Sec.*, No. 2:13-cv-1203, 2015 WL 1000648, at *3 n.1 (S.D. Ohio Mar. 5, 2015) (Marbley, J.), adopting the Report and Recommendation (Deavers, M.J.).

to deteriorate under the stress of full-time employment.  (Tr. 393, PAGEID #453).  Finally, Dr. Jefferis noted that Plaintiff suffers from "severe depression leading to decreased tolerance of normal levels of stress" and "minimal stresses have caused a worsening of [her] symptoms in the past."  (*Id.*).

Two related rules govern how the ALJ was required to analyze Dr. Jefferis's opinion. *See Dixon v. Comm'r of Soc. Sec.*, No. 3:14-cv-478, 2016 WL 860695, at *4 (S.D. Ohio Mar. 7, 2016).  The first is the "treating physician rule."  *Id.*  The rule requires an ALJ to "give controlling weight to a treating source's opinion on the issue(s) of the nature and severity of the claimant's impairment(s) if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record."  *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 384 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527(c)(2)) (internal quotation marks omitted).

Closely associated is "the good reasons rule," which requires an ALJ always to give "good reasons . . . for the weight given to the claimant's treating source opinion."  *Dixon*, 2016 WL 860695, at *4 (quoting *Blakely*, 581 F.3d at 406 (alterations in original)); 20 C.F.R. § 404.1527(c)(2).  The goal underlying the good reasons rule is two-fold.  First, it allows a plaintiff to understand her case, particularly where a plaintiff knows her physician deemed her disabled and thus "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied."  *Blakely*, 581 F.3d at 407 (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)).  Second, "it ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule."  *Id.*

The good reasons rule requires an ALJ's determination to be supported by the evidence in

the case record and "sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Cole*, 661 F.3d at 937. Under the good reasons rule, if an ALJ "declines to give a treating source's opinion controlling weight, he must then balance the following factors to determine what weight to give it: 'the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source.'" *Fletcher v. Comm'r of Soc. Sec.*, 9 F. Supp. 3d 817, 828 (S.D. Ohio 2014) (quoting *Wilson*, 378 F.3d at 544); *see* 20 C.F.R. § 406.1527(c)(2)–(6) (setting forth the relevant factors). The treating physician rule and the good reasons rule together create what has been referred to as the "two-step analysis created by the Sixth Circuit." *Allums v. Comm'r of Soc. Sec.*, 975 F. Supp. 2d 823, 832 (N.D. Ohio 2013); *see also Gayheart v. Comm. of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) ("If the Commissioner does not give a treating-source opinion controlling weight, then the opinion is weighed based the length, frequency, nature, and the extent of the treatment relationship, as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence.").

      The ALJ failed at both steps. First, the ALJ failed to conduct a controlling weight analysis. In particular, he failed to address whether Dr. Jefferis's mental health opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. Instead, the ALJ offered a single reason for rejecting Dr. Jefferis's mental health opinion: She "is a family practitioner, and not a psychologist or psychiatrist [and] such an opinion rests on an evaluation of an impairment that is outside of her area of expertise." (Tr. 33, PAGEID #93). That consideration, however, is

irrelevant to the controlling weight analysis. A doctor's expertise is a factor "relevant only *after* the ALJ has determined that a treating-source opinion will not be given controlling weight." *Dixon*, 2016 WL 860695, at *5 (internal quotation marks and citation omitted) (emphasis added). As such, the ALJ provided no controlling weight analysis. Second, the ALJ neither provided "sufficiently specific" reasons for rejecting Dr. Jefferis's opinion nor balanced the required factors. *See Cole*, 661 F.3d at 937; *Fletcher*, 9 F. Supp. 3d at 828. In fact, the ALJ did not discuss any factors beyond the treating source's area of specialty when deciding to attribute no significant weight to Dr. Jefferis's opinion. (*See* Tr. 33, PAGEID #93). Because the ALJ failed to engage in the two-step analysis required by the Sixth Circuit, this Court is unable to meaningfully review the ALJ's treatment of Dr. Jefferis's mental health opinion and concludes the ALJ erred. *Id.* (stating that the "lack of explanation regarding the controlling weight analysis hinder[ed] a meaningful review of whether the ALJ properly applied the treating-physician rule that is at the heart of th[e] regulation" (quoting *Gayheart*, 710 F.3d at 376–78) (internal quotation marks omitted)).

### B. Harmless Error

Defendant admits that the ALJ's explanation "may be less than perfect" but claims "any error should be deemed harmless." (Doc. 18 at 11). In certain circumstances, an ALJ's failure to give good reasons for rejecting the opinion of a treating source may constitute *de minimis* or harmless error. *Wilson*, 378 F.3d at 547. *De minimis* or harmless error occurs: (1) if a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) if the Commissioner has met the goal of the procedural safeguard of the good reasons rule even though an ALJ has not complied with the express terms of the regulation. *Id.*

at 547.

In this case, Defendant asserts harmless error for two reasons. First, Defendant claims that Dr. Jefferis's mental health opinion is so patently deficient that the ALJ could not possibly credit it. Second, Defendant argues that, despite his failure to comply with the express terms of the regulation, the ALJ satisfied the goal underlying the good reasons rule.

### 1. Whether Dr. Jefferis's Mental Health Opinion Is Patently Deficient

Defendant first argues that Dr. Jefferis offered no explanation to support her mental health opinion and, accordingly, it is so patently deficient that the ALJ could not possibly have credited it. In support, Defendant cites *May v. Astrue*, No. 3:09-cv-90, 2009 WL 4716033, at *8 (S.D. Ohio Dec. 9, 2009), a case in which the treating source simply checked boxes and failed to provide supporting explanations or objective evidence for finding marked and extreme functional limitations. (Doc. 18 at 11–12).

That is not the case here. Dr. Jefferis's treatment notes support her mental health opinion and reflect that her treatment of Plaintiff's depression had varying levels of success. For example, Dr. Jefferis's treatment notes demonstrate that she prescribed several medications and adjusted them in an effort to control Plaintiff's depression. (*See. e.g.*, Tr. 268, PAGEID #328 (increasing Plaintiff's Prozac for depression); Tr. 381, PAGEID #441 (adjusting medication to treat depression)). However, her treatment notes also reflect that Plaintiff's depression was uncontrolled at times despite those medications and adjustments. (*See, e.g.*, Tr. 373, PAGEID #433 (remarking that depression "[c]urrently not controlled")). If treatment notes support the physician's findings, an opinion is not patently deficient. *Fleming v. Comm'r of Soc. Sec.*, No. 4:10-cv-25, 2011 WL 3049146, at *9 (E.D. Tenn. July 5, 2011). Accordingly, the Court rejects Defendant's first basis for harmless error.

### 2. Whether the ALJ Satisfied the Goal Underlying the Good Reasons Rule

Defendant next argues that the ALJ satisfied the goal underlying the good reasons rule. In rare cases, an ALJ may satisfy the goal of providing good reasons by attacking a treating physician's opinion indirectly, finding it inconsistent with the other record evidence and otherwise unsupportable. *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 472 (6th Cir. 2006). Stated differently, an ALJ may "implicitly provide[ ] sufficient reasons" for not giving a treating physician's opinion controlling weight, and for giving it "little or no weight overall." *Id.* However, "[a]n ALJ's failure to give good-reason is rarely a harmless error under Sixth Circuit precedent." *Pyatt v. Comm'r of Soc. Sec.*, 771 F. Supp. 2d 891, 900 (S.D. Ohio 2011); *see also Hensely v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009) ("[W]e do not hesitate to remand when the Commissioner has not provided 'good reasons' for weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJs that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.'" (quoting *Wilson*, 378 F.3d at 545)).

Although the ALJ refers to competing medical opinions regarding Plaintiff's mental health, Defendant does not rely on those references in arguing harmless error. (Doc. 18 at 13). Rather, in arguing that the goal underlying the good reasons rule was satisfied, Defendant specifically cites to portions of the ALJ's decision which rely on "Plaintiff's own statements and admissions as to her mental abilities." *Id.* Defendant provides no case, and this Court is unaware of any, where the ALJ satisfied the goal of the good reasons rule simply by referring to Plaintiff's subjective testimony.

In contrast, in the rare cases where harmless error in this context is found, the ALJ cites to competing physician opinions and relies on objective medical evidence as a basis for the

12

weight given to the treating physician's opinion. *See, e.g.*, *Nelson*, 195 F. App'x at 470–71 (finding harmless error where ALJ's discussion made it clear that treating sources' opinions were not consistent with other evidence as whole, including opinions of other doctors); *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 440 (6th Cir. 2010) (finding harmless error where the ALJ discussed other record evidence, including other doctors' opinions); *Hickney-Haynes v. Barnhart*, 116 F. App'x 718, 725 (6th Cir. 2004) (finding harmless error where the ALJ found the opinions conflicted with another treating physician's opinion and record evidence). In this case, although the ALJ sets forth the information Plaintiff provided to Dr. Dubey, recites Dr. Dubey's conclusions, and briefly mentions the opinions of the reviewing psychologists (*see, e.g.*, Tr. 23, PAGEID #83; Tr. 26–27, PAGEID #86–87), he does not tie those references to Dr. Jefferis's opinion in a way that would provide a meaningful reason to discount Dr. Jefferis's opinion. Instead, and as noted above, the ALJ summarily dismissed Dr. Jefferis's treating-physician opinion simply because she was not a psychologist or psychiatrist.

Based on the foregoing, the ALJ's references to competing physician opinions are not presented in a way that would allow Plaintiff to understand her case, particularly where she knows that Dr. Jefferis, her treating physician, has deemed her disabled. *See Blakely*, 581 F.3d at 407 (noting that "[t]he requirement of reason-giving exists, in part, to let claimants understand the disposition of cases" (quoting *Wilson*, 378 F.3d at 544) (internal quotation marks and citation omitted)). Thus, the ALJ has not satisfied the goal underlying the good reasons rule, and the error was not harmless.

**IV. CONCLUSION**

In this case, the ALJ failed to follow the applicable procedural requirements in reaching his disability determination, which precludes meaningful review. Specifically, the ALJ failed to

conduct a controlling weight analysis that addressed whether Dr. Jefferis's opinion on Plaintiff's mental health is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. Moreover, the ALJ failed to give good reasons for attributing no significant weight to Dr. Jefferis's opinion, and his error was not *de minimis* or harmless.  The ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even if his conclusion ultimately may be justified based upon the record.  Consequently, it is **RECOMMENDED** that the Plaintiff's statement of errors be **SUSTAINED** to the extent that the case be remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), Sentence Four.

**V.     PROCEDURE ON OBJECTIONS**

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. § 636(b)(1).  Failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report

and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140, 152–53 (1985).

      IT IS SO ORDERED.


Date:  June 3, 2016                                      /s/ Kimberly A. Jolson
                                                              KIMBERLY A. JOLSON
                                                              UNITED STATES MAGISTRATE JUDGE